**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION**

**DANNY MCGLOTHLIN, et al.**                                                   **PLAINTIFFS**

**v.**                                          **NO. 1:11-CV-55 JMM**

**FRANK DRAKE, et al.**                                                   **DEFENDANTS**

**FRANK DRAKE'S MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE
ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE**

**INTRODUCTION**

To survive this motion, plaintiffs must show that personal jurisdiction over Frank Drake comports with due process by establishing that: (i) Mr. Drake personally directed substantial activities towards this state; and (ii) that the cause of action arises out of Mr. Drake's Arkansas-directed actions. But because Mr. Drake has had no substantial connections to Arkansas, plaintiffs cannot establish either of those required elements.

Frank Drake is an individual who lives in Wisconsin, where he works as an engineer for co-defendant Cequent Performance Products, Inc. ("Cequent"). He has never set foot in Arkansas, and plaintiffs' claims are directed toward Mr. Drake's employer Cequent, not him personally. Aside from taking unsolicited sales calls from plaintiff Danny McGlothlin and listening to McGlothlin's follow-up sales pitches (all of which occurred at Cequent's Wisconsin offices), Mr. Drake has never spoken to anyone in Arkansas. Mr. Drake has not directed any activities towards Arkansas and none of

{3631263:}

the causes of action against Mr. Drake – all of which lack substantive merit – arise out of any Arkansas-directed activities.

Rather, plaintiffs have reached beyond their Arkansas home to direct sales solicitations towards Wisconsin by calling and sending promotional materials to Cequent in Wisconsin. Then, McGlothlin physically traveled to Wisconsin to try and convince Cequent to do business with his company, MCB Sales & Installation Services, Inc. ("MCB"). Cequent's declining (through its employee Mr. Drake) to do business with MCB does not purposefully avail Mr. Drake of Arkansas law. The Court should dismiss him from this case.

## BACKGROUND

### I.    The Inventors, Patents, and Businesses at Issue

Arkansas resident Danny McGlothlin is the named inventor of U.S. Patent No. 7,311,331 ("the '331 patent"), a utility patent that claims a "Method and Apparatus for Raising and Lowering a Trailer." (Compl., ¶ 1, Ex. A.). Plaintiff McGlothlin no longer owns the '331 patent because he assigned it to his co-plaintiff MCB, an Arkansas corporation. (*Id.*) Collectively, McGlothlin and MCB are "Plaintiffs." The '331 patent claims a motor-driven trailer jack.

Mr. Drake is an individual who lives and works in Wisconsin. (Compl. ¶ 1.) He is the Director of Engineering for Cequent's Trailer Division. (Drake Decl. ¶ 3.)[1] Cequent's Trailer Division is headquartered in Mosinee, Wisconsin, which is where Mr. Drake has worked as an engineer for the last nine years. (*Id.* ¶ 5.)

---

[1] A true copy of Frank Drake's Declaration is attached as **Exhibit A**.

Cequent is a Delaware corporation with a principal place of business in Michigan. Cequent makes and sells a wide variety of towing and trailer products. Cequent owns U.S. Patent Nos. D560,324 and D561,424 (collectively, "the Cequent Design Patents").[2] The Cequent Design Patents claim only an ornamental design. *See* 35 U.S.C. § 171. In contrast, MCB's '331 patent is a utility patent, which claims the mechanical structure and function of a device. *Carman Indus., Inc. v. Wahl*, 724 F.2d 932, 939 n.13 (Fed. Cir. 1983).

## II.     McGlothlin Tries To Solicit Business From Cequent

Around 2004, McGlothlin made an unsolicited phone call to Mr. Drake in an effort to sell MCB trailer jacks to Cequent. (Drake Decl. ¶ 26.) Mr. Drake did not know McGlothlin before this cold-call, and he had never previously heard of him or MCB. (*Id.* ¶ 27.) Over the phone, McGlothlin explained that MCB sold trailer jacks that he thought Cequent might be interested in buying. (*Id.* ¶ 28.) Mr. Drake did not know from where McGlothlin had called him. (*Id.*) A persistent salesman, McGlothlin then sent public product literature and a trailer jack to Mr. Drake at Cequent's facility in Mosinee, Wisconsin. (*Id.* ¶ 29.) McGlothlin, on behalf of his company MCB, sent those items to Wisconsin on his own initiative without requiring a confidentiality agreement from Mr. Drake or Cequent. (*Id.*) In fact, McGlothlin never said, or suggested, that the items he had sent to Mr. Drake were confidential or trade secret. (*Id.* ¶ 30.) Nor did McGlothlin ask Mr. Drake to keep any of those items secret. (*Id.*) Further, there was no

---

[2] True copies of the Cequent Design Patents are attached as **Exhibits 1** and **2** to Mr. Drake's Declaration.

confidentiality because MCB previously publicly disclosed its trailer jack and also applied for patent protection. (*See* Compl. ¶ 4; *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 707-08 (7th Cir. 2006) ("Publication in a patent destroys the trade secret.").)

Mr. Drake and other Cequent employees inspected MCB's trailer jack and reviewed the advertising materials at Cequent's Wisconsin facility. (Drake Decl. ¶ 31.) Cequent decided not to buy any trailer jacks from MCB. (*Id*.) McGlothlin followed up with a few phone calls to Mr. Drake and with an in-person sales pitch to Cequent in Wisconsin. (*Id*. ¶ 32.) But Cequent remained uninterested in MCB's trailer jacks. (*Id*. ¶ 34.) Because Cequent had no interest in MCB's trailer jack, it never used what MCB had sent to Wisconsin, nor did it disclose those materials to anyone outside of Cequent's Trailer Division. (*Id*. ¶ 30.) The few communications between McGlothlin and Mr. Drake never matured beyond preliminaries, and they never discussed any details of a potential business deal because Cequent had no interest. (*Id*. ¶ 35.) As the one trying to make a sale, it was McGlothlin who initiated every communication with Cequent in Wisconsin. (*Id*. ¶ 40.)

## III.   **Plaintiffs Sue Cequent and Mr. Drake**

Nearly eight years have passed and now Plaintiffs have sued both Cequent and Mr. Drake here in Arkansas. Although difficult to discern, viewing Plaintiffs' allegations in a light most favorable to them, their complaint appears to assert the following causes of action:

1.     **Declaratory Judgment -- Invalidity.** Plaintiffs seek a declaration that the Cequent Design Patents are invalid. (Compl. ¶ 1 ("Plaintiffs seek declaratory judgment on invalidity of the Drake patents"), ¶¶ 8, 12.)

2.     **Patent Interference.** Plaintiffs assert a patent interference claim under 35 U.S.C. § 291. (Compl. ¶ 1.) Apparently, Plaintiffs seek a declaration that MCB's '331 patent and the Cequent Design Patents claim the same subject matter.

3.     **Patent Infringement.** Plaintiffs assert patent infringement against all defendants, apparently based on their allegation that Cequent's "patents infringe upon Plaintiff's patent" and that "Cequent has marketed, sold, and distributed the invention at issue throughout the United States, including Arkansas." (*See* Compl. ¶ 7, 7a.)

4.     **Theft Of Trade Secrets.** Plaintiffs assert claims under Wisconsin's and Arkansas' Trade Secrets Acts. (Compl. ¶¶ 16-19.) Apparently, Plaintiffs assert the trailer jack McGlothlin showed Cequent in Wisconsin was somehow a trade secret (*id.* ¶ 4), despite Cequent having no obligation to keep what it saw a secret.

5.     **Tortious Interference.** Plaintiffs claim that defendants tortiously interfered with contracts that it allegedly had with "Big Tex" and "Road Systems." (Compl. ¶ 21.)

## IV.    Frank Drake's Lack Of Connection To Arkansas

The complaint makes some vague and false allegations about Mr. Drake's connections to Arkansas. (*E.g.*, Compl. ¶ 1, 7.) But the truth is that Mr. Drake has no connections to Arkansas, let alone the substantial connections needed to assert personal jurisdiction over him. Mr. Drake has spent his adult life living and working in Wisconsin and in Minnesota before that. (Drake Decl. ¶ 1-5.) He has never lived, vacationed, worked, or set foot in Arkansas. (*Id.* ¶ 10-15.) He has never even communicated with anyone in Arkansas in his individual capacity. (*Id.* ¶ 16.) And the only communications he has had with an Arkansas resident in any capacity are his few

interactions with McGlothlin, which he participated in only as a Cequent employee. (*Id.* ¶ 17.) And each communication occurred while Mr. Drake was at his Cequent office in Wisconsin. (*Id.* ¶ 36.) Moreover, McGlothlin initiated each of those communications. (*Id.* ¶ 40.) If Mr. Drake ever called McGlothlin, it was only to return a previous call from McGlothlin. (*Id.*)

## LAW AND ARGUMENT

### I.   The Due Process Clause Protects Mr. Drake

The United States Constitution protects individuals, like Frank Drake, from being haled to a faraway court when he has not purposefully availed himself of the benefits or protections of that distant forum. This country's high court explained:

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations."

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).

When, as here, defendant challenges jurisdiction through affidavit evidence, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony, or documents. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004). "The plaintiff's 'prima facie showing' [of jurisdiction] must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.; accord Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007). "When personal jurisdiction is challenged, plaintiff has the burden to show that jurisdiction exists." *Burlington Indus., Inc. v. Maples Indus.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

To satisfy its burden, Plaintiffs must establish either general or specific jurisdiction. General jurisdiction exists if a defendant has "continuous and systematic" contacts with the forum state, regardless of whether those contacts relate to the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 (1984). Specific jurisdiction applies only when the cause of action arises directly from the defendant's contacts with Arkansas. *Dever*, 380 F.3d at 1073.

Jurisdiction exists only if permitted by Arkansas' long-arm statute and the Due Process Clause of the U.S. Constitution. *Dever*, 380 F.3d at 1073. Because Arkansas's long-arm statutes extends jurisdiction to its due process limit, however, the single question is whether exercising personal jurisdiction comports with due process. *Id.*

Because Plaintiffs have asserted patent claims against Mr. Drake, Federal Circuit law – rather than regional circuit law – controls the due process inquiry. *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998); *see also P.S. Prods., Inc. v. Alibaba.com Inc.*, No. 4:10CV01149 JMM, 2011 WL 861164, at *2 (E.D. Ark. Mar. 10, 2011) (Moody, J.). That is true regardless of the other state law claims asserted by Plaintiffs. *See 3D Systems*, 160 F.3d at 1377-78.

## II.      This Court Lacks General Jurisdiction Over Mr. Drake

Mr. Drake has never been in Arkansas or done business here, and McGlothlin is the only person in Arkansas to whom Mr. Drake has ever spoken. (Drake Decl. ¶ 10-21.) Thus, this Court lacks general jurisdiction over him as he has no "continuous and systematic" contacts with Arkansas. *Compare Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008) (no general jurisdiction over defendants who hade made only eight

sales in forum state) *with LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (general jurisdiction existed over defendant who had made "millions of dollars of sales" and had broad distributorship network in forum state). Moreover, an individual ordinarily is subject to general jurisdiction only where he or she lives. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853-54 (2011). Therefore, Plaintiffs cannot establish general personal jurisdiction over Mr. Drake.

**III.**     **This Court Also Lacks Specific Jurisdiction Over Mr. Drake**

    **A.**     **Plaintiffs Have The Burden To Establish Specific Jurisdiction**

Whether this Court has specific jurisdiction depends upon three elements: (1) whether Mr. Drake has purposefully directed his activities at Arkansas; (2) whether the claims arise out of or relate to Arkansas-directed activities; and (3) whether exercising personal jurisdiction over Mr. Drake is reasonable and fair. *3D Systems*, 160 F.3d at 1378. The first two factors correspond with the minimum contacts test of *International Shoe* and the third factor corresponds with the fair play and substantial justice prong of the test. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). Only if plaintiffs prove both of the first two factors, does the burden shift to Mr. Drake to show exercising jurisdiction is not "reasonable and fair." *Id.* at 1363. As explained in the following sections, Plaintiffs cannot establish jurisdiction because they cannot meet either of the first two prongs of the test.

**B.** **Mr. Drake Did Not Purposefully Avail Himself Of Arkansas Law**

*1.* *Mr. Drake Had No Contact With Arkansas As An Individual*

First, no specific jurisdiction exists because Mr. Drake did not purposefully direct any activities as an <u>individual</u> towards this forum. When an individual's actions in relation to a forum state are taken in his or her capacity as an employee of a business, those actions cannot support personal jurisdiction over the individual. *See 3D Systems*, 160 F.3d at 1380. In *3D Systems*, a patentee sued a business (Aaroflex) and Aaroflex's president (Young) for patent infringement in California. On behalf of Aaroflex, Young had sent price quotations, promotional materials, and letters into California, offering to sell Aaroflex's accused devices to California businesses. *Id.* at 1376. While those contacts may have supported jurisdiction over Aaroflex, the Federal Circuit affirmed they could not trigger jurisdiction over Young. Because "[a]ll of Young's actions in relation to the state of California were taken in his role as an officer of Aaroflex," the court explained, "Young did not direct any activities individually toward California." *Id.* at 1380. Thus, the district court dismissed Young for lack of personal jurisdiction, and the Federal Circuit affirmed. *Id.*

If directing solicitations into a forum on behalf of a business does not support jurisdiction in that forum, then neither does receiving solicitations out of the forum on behalf of a business. McGlothlin contacted Mr. Drake, hoping to strike a business deal between McGlothlin's MCB and Cequent. Mr. Drake never communicated with McGlothlin in a personal capacity. (Drake Decl. ¶ 37-39.) Because all of Mr. Drake's actions in relation to McGlothlin were taken in his role as a Cequent employee, Mr.

Drake could not have had any individual Arkansas contacts. Therefore, there is no specific jurisdiction over Mr. Drake as an individual. On this basis alone, the Court should dismiss Mr. Drake.

> 2.   *Mr. Drake's Contacts With McGlothlin As A*
> *Cequent Employee Were Not Directed At Arkansas*

Separate from that, Mr. Drake's contacts with McGlothlin are too insignificant and one-sided to create the "substantial connection" with Arkansas needed to support personal jurisdiction, regardless of the capacity in which he acted. *See Burger King*, 471 U.S. at 475. Even if Mr. Drake's activities on behalf of Cequent were somehow imputed to him personally, he still did not purposefully direct any activities towards Arkansas. To the contrary, it was McGlothlin who directed his business activities towards Wisconsin by trying to solicit business with Cequent through Mr. Drake. When McGlothlin made his unsolicited phone call to Cequent in Wisconsin, Mr. Drake did not know where McGlothlin was calling from. (Drake Decl. ¶ 28.) McGlothlin sent MCB's trailer jack and promotional materials to Wisconsin on his own initiative, hoping to impress Cequent. Cequent's declining to do business with MCB simply is not purposeful availment of the benefits and protections of Arkansas and its laws.

In fact, Mr. Drake's contacts with Arkansas are even more attenuated than forum contacts held insufficient in other cases. For example, in *Porter*, plaintiffs sued Connecticut lawyers who were hired to draft trust documents for trusts registered in Missouri. *Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir. 2002). Plaintiffs argued Missouri had personal jurisdiction because the lawyers had exchanged phone calls and letters

with their clients in Missouri and because the alleged injury was felt in Missouri. The district court disagreed and dismissed the case. The Eighth Circuit affirmed, holding that "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." *Id.* at 1076. Because the lawyers did not maintain offices in Missouri, did not solicit business in Missouri, and did all of their work from their Connecticut offices, the Court held they could not have foreseen being haled into a court in Missouri for those Connecticut actions. *Id.* at 1077.

Here, Mr. Drake had even less of a connection to the forum state than the defendants in *Porter*. Unlike the defendants there – who repeatedly contacted clients in Missouri to provide paid services – Cequent never entered into business dealings with MCB. (Drake Decl. ¶ 18, 35.) Instead, Cequent chose early on not to do business with MCB. In fact, Mr. Drake's and McGlothlin's discussions never developed beyond the preliminary stage, and they never discussed any of business details. (*Id.*)

Mr. Drake has looked for, but did not find, a single case in the history of American jurisprudence subjecting one to personal jurisdiction of another state because a salesman from that state had made an unsuccessful sales pitch to the individual in his home state. In short, listening to and declining a business possibility, on behalf of his employer, from his office in Wisconsin gave Mr. Drake no constitutional "fair warning" that he could be haled personally into an Arkansas court. Indeed, McGlothlin's unilateral decision to target Cequent for potential business is the very type of "random," "fortuitous," "attenuated," and "unilateral activity" that cannot support jurisdiction against Mr. Drake. *See Burger King*, 471 U.S. at 475.

Since Mr. Drake had no Arkansas-directed activities, Plaintiffs cannot establish specific jurisdiction. The Court should dismiss accordingly.

### C.  Plaintiffs' Claims Do Not Arise Out Of Arkansas-Directed Contacts

Plaintiffs' inability to establish the first jurisdictional element is fatal. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362-63 (Fed. Cir. 2001). Plaintiffs also cannot establish the second element, the "arising out of" prong, so that the Court should dismiss on this second separate ground. This is because not one of Plaintiffs' claims arise out of any Arkansas-directed activities by Mr. Drake.[3]

First, patent infringement actions arise where the accused product is made, sold, offered for sale, used, or imported. *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1310 (Fed. Cir. 1999) (affirming dismissal of defendant who did not sell of offer to sell accused product in forum state); *Grace Mfg., Inc. v. Walgreen Co.*, No. 09-2044, 2008 WL 4831753, at *4-5 (W.D. Ark. Nov. 3, 2008) (dismissing defendant in patent infringement case where no infringing sales were made in Arkansas). Regardless of the capacity in which he acted, Mr. Drake has not sold, offered to sell, made, used, or imported any product in Arkansas, let alone product that allegedly infringes MCB's patent. (Drake Decl. ¶ 12-13, 19, 22-23.) Thus, Plaintiffs' patent infringement claim does not, and cannot, arise out of any Arkansas-directed activities by Mr. Drake.

Second, declaratory judgment claim of invalidity arises where defendant asserts patent infringement. *Avocent Huntsville Corp. v. Aten Intern'l Co.*, 552 F.3d 1324, 1332

---

[3] Further all of Plaintiffs' claims against Mr. Drake are unsupported by the law and the alleged facts, and therefore all are subject to a motion to dismiss under Rules 12(b)(1) and 12(b)(6), which Mr. Drake has filed along with this motion.

(Fed. Cir. 2008) (affirming dismissal of declaratory claim for lack of personal jurisdiction). Mr. Drake has never tried to enforce any of the Cequent Design Patents anywhere, let alone in Arkansas. (Drake Decl. ¶ 9.) Thus, Plaintiffs' declaratory judgment and interference claims cannot arise out of any Arkansas-directed activities

Third, Plaintiffs' trade secret claim – while facially deficient as a matter of law – does not arise out of any Arkansas-directed activities by Mr. Drake. Even if the Court were to presume the truth of Plaintiffs' false allegations – which it is not required to do for purposes of this motion – the "theft" Plaintiffs allege occurred in Wisconsin, where McGlothlin showed MCB's trailer jack to Cequent.   (Compl. ¶ 4.) And any use or disclosure of what McGlothlin gave Cequent and Mr. Drake would have occurred at Cequent's facility in Wisconsin, not in Arkansas. (Drake Decl. ¶ 10.)

Fourth, Plaintiffs' tortious interference claim, which also is facially deficient, does not arise out of any Arkansas-directed activities by Mr. Drake personally. He has never communicated with any business in Arkansas, other than MCB, so it is impossible that any Arkansas-directed activities by Mr. Drake could give rise to a tortious interference claim. (Drake Decl. ¶ 16-17.) And Mr. Drake has not communicated in any forum with the only Arkansas customer that Plaintiffs identify: Road Systems. (Drake Decl. ¶ 43(E).)

Because no claims arise out of any Arkansas-directed activities by Mr. Drake, Plaintiffs cannot carry their burden to establish personal jurisdiction is proper over him. Thus, the Court should dismiss Mr. Drake on this second separate and independent ground.

**D.      It Is Unreasonable To Require Mr. Drake, A Mere Employee, To Personally Defend Himself In Arkansas**

Because Plaintiffs cannot satisfy either of the first two elements needed to establish jurisdiction, the Court need not address the third "reasonableness" prong of the test. Still, were it to do so, the Court should find it unreasonable to require Mr. Drake – a mere employee of an insufficiently accused infringer – to defend himself in this faraway jurisdiction. That is especially true because Mr. Drake has done nothing conceivably wrong. As demonstrated in Mr. Drake's separately-filed motion to dismiss, Plaintiffs are unable to supply any factual allegations to state a plausible claim against Mr. Drake. Thus, it would be unfair to require Mr. Drake to incur the extra legal fees and burden needed to extricate himself from this baseless lawsuit over 700 miles away from his home.

**IV.      Alternatively, Venue Is Not Proper**

Separate from the incurable defects discussed above, Plaintiffs also cannot establish that venue is proper in this Court. So, in the alternative, the Court should dismiss due to improper venue under Rule 12(b)(3) or transfer venue to the Western District of Wisconsin under 28 U.S.C. § 1406.

Because Mr. Drake has objected to venue, Plaintiffs have the burden to establish that it is proper. *Transamerica Life Ins. Co. v. IMG Mktg., Inc.*, No. 4:11CV00020, 2011 WL 861130, at *2 (E.D. Ark. Mar. 10, 2011). In deciding a motion to dismiss due to improper venue, the Court is not confined to the allegations of the complaint and must consider affidavit evidence. *Id.*; *see also* 5B C. Wright & A. Miller, *Fed. Prac. & Proc.* § 1352 (2011).

The venue statute for patent infringement claims, 28 U.S.C. § 1400(b), limits venue to judicial districts: (i) "where the defendant resides"; or (ii) "where the defendant has committed acts of infringement and has a regular and established place of business." Mr. Drake does not reside in Arkansas; he resides in Wisconsin. (Drake Decl. ¶ 1.) He also has committed no acts of infringement in Arkansas, and he has no office or any place of business in Arkansas. (*Id.* ¶ 10-15, 21.) In fact, he has no presence in Arkansas whatsoever. Indeed, because Plaintiffs do not allege that Mr. Drake resides in Arkansas or that he has a "regular and established place of business," Plaintiffs cannot possibly contend venue is proper here. *See Instituform Techs., Inc. v. Amerik Supplies, Inc.*, No. 3:07CV687, 2008 WL 276404, at *2-3 (E.D. Va. Jan. 30, 2008) (transferring venue because venue was improper as to individual defendant sued for patent infringement).

Thus, venue over Plaintiffs' claims against Mr. Drake is improper and the Court should dismiss. *See Max Daetwyler Corp. v. Input Graphics, Inc.*, 541 F. Supp. 115, 117-18 (E.D. Pa. 1982) (dismissing for improper venue under § 1400). In the alternative, the Court should transfer the case under 28 U.S.C. § 1406 to Mr. Drake's home forum: the Western District of Wisconsin. *See, e.g., Instituform*, 2008 WL 276404, at *2-3 (transferring improperly venued patent case under § 1406).

## CONCLUSION

Because Plaintiffs cannot establish personal jurisdiction or proper venue over Frank Drake, the Court should dismiss him from this case entirely.

Dated: March 2, 2012     Respectfully submitted,

            McDonald Hopkins LLC
            David B. Cupar
            Matthew J. Cavanagh
            601 Superior Ave., East, Suite 2100
            Cleveland, Ohio 44114
            t 216.348.5400 / f 216.348.5474
            dcupar@mcdonaldhopkins.com
            mcavanagh@mcdonaldhopkins.com

            Attorneys for Cequent Performance
            Products, Inc. and Frank Drake

By:  /s/ Matthew J. Cavanagh
            Matthew J. Cavanagh
            Ohio Bar No. 0079522