**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

DANNY MCGLOTHLIN; and MCB SALES                                            PLAINTIFFS
& INSTALLATION SERVICES, INC.

v.                                        No. 1:11CV00055 JH

FRANK DRAKE; and CEQUENT
PERFORMANCE PRODUCTS, INC.                                                 DEFENDANTS

**OPINION AND ORDER**

Danny McGlothlin and MCB Sales & Installation Services, Inc., initiated this action against Frank Drake and Cequent Performance Products, Inc., seeking monetary damages and injunctive relief for patent infringement, patent interference, misappropriation of trade secrets in violation of Arkansas and Wisconsin's trade secrets acts, violations of the Arkansas Deceptive Trade Practices Act, and tortious interference with contractual relations. The plaintiffs also seek a declaration that two patents belonging to Cequent are invalid.

Both defendants have filed a motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Document #26. The plaintiffs have responded, and also have filed a motion for leave to file an amended complaint. Documents #34, #40. The plaintiffs have provided their proposed amended complaint, which adds specific factual allegations but otherwise is similar to the original complaint. Document #40-1. In their response to the motion to dismiss, the plaintiffs have relied upon factual allegations contained in the proposed amended complaint but not in the original complaint. The defendants contend that the proposed amendments would be futile and ask the Court to deny the motion to amend and dismiss all claims with prejudice. *See* Documents #39, #41.

Separately, Drake has also filed a motion to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(3). Document #24. Drake contends that the Court cannot exercise personal jurisdiction over him because he lacks minimum contacts with Arkansas.[1] The plaintiffs, apparently conceding that the Court lacks personal jurisdiction over Drake, have filed a motion to non-suit Drake and dismiss all claims against him without prejudice. Document #33. In response, Drake contends that he is entitled to have the claims against him dismissed with prejudice for the reasons articulated in the motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). *See* Document #37. However, the Court must possess personal jurisdiction over Drake before it "can reach the merits of a dispute and enter legally binding orders[.]" *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 374 (8th Cir. 1990) (finding personal jurisdiction to be a threshold issue which must be resolved before considering whether the complaint failed to state a claim). Consequently, Drake's motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(3), and the plaintiffs' motion to non-suit Drake will be granted. The claims against Drake will be dismissed without prejudice.

Furthermore, for reasons discussed hereafter, the Court will grant the plaintiffs' motion to amend their complaint. However, the Court will construe the motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) as applying to the proposed amended complaint. *See, e.g., Reddy v. JPMorgan Chase Bank, N.A.*, No. 2:09CV1152, 2010 WL 3447629, at *4 (S.D. Ohio Aug. 30, 2010) (considering defendants' motion to dismiss as applying to the proposed amended complaint); *Hentz v. E. Or. Corr. Inst. Admin.*, No. CIV 98-993, 1999 WL 562698, at *1 (D. Or. July 30, 1999) ("[T]he court will hereby construe [the defendant]'s motion to dismiss as applying to the Second

---

[1] Alternatively, Drake asks the Court to transfer the action to the Western District of Wisconsin.

Amended Complaint."). Construed in this manner, the Court will grant that motion to dismiss in part and deny it in part.

**I.**

McGlothlin is the named inventor of United States Patent No. 7,311,331, a utility patent that claims a powered jacking device which can be installed on a trailer and used to raise or lower the trailer. It appears from the face of the patent, which the plaintiffs attached to the complaint, that McGlothlin assigned the patent to MCB Sales. The patent application was filed in 2003[2] and the patent issued on December 25, 2007.

The proposed amended complaint alleges that the plaintiffs began to market the product to potential buyers in 2005. According to the proposed amended complaint, the plaintiffs approached Cequent and one of its engineers, Drake. The proposed amended complaint alleges that Drake initially expressed interest but that Cequent subsequently refused to purchase any products from MCB Sales. The proposed amended complaint alleges further that the plaintiffs provided Cequent and Drake with two prototypes marked with the phrase "patent pending." According to the proposed amended complaint, Drake did not return the two prototypes, claiming they were lost.

The proposed amended complaint alleges that approximately three months later Cequent began selling a powered jacking device that is similar, if not identical, in design and utility to the invention claimed in the 331 patent. Furthermore, according to the proposed amended complaint, Cequent subsequently acquired two design patents for a powered drive for a jack—Nos. D560,324 and D561,424—purportedly invented by Drake.

---

[2] The proposed amended complaint identifies both 2003 and 2005 as the years wherein the patent application was filed. The patent itself reveals that the application was filed on October 3, 2003.

## II.

The pleading standards, and the correlative standards for ruling on a motion to dismiss under Rule 12(b)(6), are well known. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8(a)(2) does not require a complaint to contain detailed factual allegations, it does require a plaintiff to state the grounds of his entitlement to relief, which requires more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). In ruling on a motion to dismiss, the Court must accept as true all factual allegations in the complaint and review the complaint to determine whether its allegations show that the pleader is entitled to relief. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). The Court need not, however, accept as true legal conclusions, even those stated as though they are factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## III.

Cequent contends that the Court lacks subject matter jurisdiction over the plaintiffs' request for a declaratory judgment that the design patents are invalid. Cequent also contends that the plaintiffs have failed to state a claim for patent interference, patent infringement, misappropriation of trade secrets, tortious interference with business contacts, and deceptive trade practices. Finally, Cequent challenges McGlothlin's standing to bring any of the claims asserted in the proposed amended complaint.

**A.    Declaratory Judgment**

The plaintiffs seek a declaratory judgment that Cequent's two design patents are invalid. Cequent contends that the Court lacks subject matter jurisdiction over this claim inasmuch as there is no case or controversy as required by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because Cequent has not attempted to enforce its patents against the plaintiffs. "A court has subject matter jurisdiction under the Declaratory Judgment Act only if 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604 (2007)). "[D]eclaratory judgment jurisdiction will not arise merely on the basis that a party learns of the existence of an adversely held patent, or even perceives that such a patent poses a risk of infringement, in the absence of some affirmative act by the patentee." *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 653 F.3d 1329, 1344 (Fed. Cir. 2011), *vacated on other grounds by* 132 S. Ct. 1794 (2012); *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007).

The proposed amended complaint does not allege that Cequent performed any "an affirmative act[s] . . . related to the enforcement of [its] patent rights[.]" *Ass'n for Molecular Pathology*, 653 F.3d at 1343. Consequently, the Court lacks subject matter of the plaintiffs' claim that Cequent's two patents are invalid. This claim must be dismissed.

**B.     Patent Interference**

The plaintiffs allege that Cequent's two patents interfere with the 331 patent. The parties agree that patents only interfere if they claim the same subject matter. *See Albert v. Kevex Corp.*, 729 F.2d 757, 758 n.1 (Fed. Cir. 1984) ("Two or more patents 'interfere'—a term of art in patent law—when they claim the same subject matter."); *see also Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 934 (Fed. Cir. 2003). "By definition, a utility patent encompasses 'any new and useful process, machine, manufacture, or composition of matter.' " *Safco Prods. Co. v. Welcom Prods., Inc.*, 799 F. Supp. 2d 967, 974 (D. Minn. 2011) (quoting 35 U.S.C. § 101). "In contrast, a design patent claims [only] ornamental features[.]" *Id.* (citing 35 U.S.C. § 171 and *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)); *see also Pepitone v. Am. Standard, Inc.*, 983 F.2d 1087, 1992 WL 336539, at *2 (Fed. Cir. Nov. 17, 1992) (Table) (design patents "cannot include claims to the structural or functional aspects of the article or device.") (citing 37 C.F.R. § 1.153(a) and *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988)). Consequently, "a design patent and a utility patent cannot interfere because they cannot claim the same subject matter." *Pepitone*, 1992 WL 336539, at *2.

According to the proposed amended complaint, the 331 patent is a utility patent while both of Cequent's patents are design patents. Therefore, the plaintiffs' patent interference claim fails as a matter of law, and must be dismissed.

**C.     Patent Infringement**

The plaintiffs allege that one of Cequent's products infringes on the 331 patent. Cequent argues that this claim must be dismissed because the complaint fails to "allege the specific [Cequent] product that allegedly infringes on [the 311] patent[]." *Trading Techs. Int'l., Inc. v. BCG Partners,*

*Inc.*, Nos. 10C715, 10C716, 10C718, 10C720, 10C721, 10C726, 10C882, 10C883, 10C884, 10C885, 10C929, 10C931, 2011 WL 1706136, at *2 (N.D. Ill. May 5, 2011). Regardless, the plaintiffs do identify a specific Cequent product in their proposed amended complaint. Specifically, the plaintiffs point to a "powered drive jack" that allegedly "embodies" the 331 patent and is "placed in the stream of commerce under Cequent's brand name BULLDOG® under serial No. BS01197; Part No. 1046130; and Vendor ID No. 102279."

Cequent contends that the proposed amended complaint, vis-a-vis the infringement claim, is nonetheless futile "because it is impossible for [the Cequent] product to infringe the '331 patent." Specifically, Cequent argues that "every claim of the '331 patent requires that an intermediate 'cross member' connect the motor's 'drive shaft' to each jack[,]" whereas " the Cequent drive shaft connects directly to the jack without an intermediate 'cross member' component[.]" *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011) ("To prove infringement, the plaintiff bears the burden of proof to show the presence of every element or its equivalent in the accused device."); *see also BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997)). Additionally, Cequent contends that "because every claim of the '331 patent requires a 'trailer,' it is impossible that Cequent selling a motor kit without the trailer could directly infringe under 35 U.S.C. § 271(a)." *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 (Fed. Cir. 2000) ("The Supreme Court . . . held that in order to infringe under § 271(a), the accused device must include all of the limitations contained within the patent claim, not just any one limitation.") (citing *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 528, 92 S. Ct. 1700, 1701, 32 L. Ed. 2d 273 (1972)).

Determining whether a particular product infringes on a patent requires a two-step analysis. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318-19 (Fed. Cir. 2011) ("A determination of infringement involves two steps: First, the court determines the scope and meaning of the asserted patent claims. The court then compares the properly construed claims to the allegedly infringing device to determine whether all of the claim limitations are present, either literally or by a substantial equivalent.") (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)). Cequent's arguments turn on the scope and ultimate meaning of the 331 patent's claims. However, "[a] motion to dismiss is not the proper time to initiate claim construction[.]" *Fujitsu Ltd. v. Belkin Intern., Inc.*, 782 F. Supp. 2d 868, 890 (N.D. Cal. 2011) ("Claim construction and infringement analysis should not be resolved on a motion to dismiss."); *see also Karl Kiefer Mach. Co. v. U.S. Bottlers Mach. Co.*, 113 F.2d 356, 357 (7th Cir. 1940) ("[I]t is impossible for [the court] to appraise the claims or determine the extent of their scope, or the range of equivalents of their elements, without knowledge of the prior art, the history of the art, [et cetera.]"). Therefore, the motion to dismiss is denied as to the plaintiffs' patent infringement claim.

**D.     Trade Secret**

The plaintiffs allege that the invention covered by the 331 patent was a trade secret that Cequent misappropriated in violation of Arkansas and Wisconsin law. Cequent argues that this claim should be dismissed because the allegations contained in the complaint are too vague. Pursuant to the Arkansas Theft of Trade Secrets Act, a "trade secret" is any

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ark. Code Ann. § 4-75-601(4); *see also* Wis. Stat. § 134.90(1)(c).[3] In their proposed amended complaint, the plaintiffs allege that their jacking device is unique because it contains a gear box that increases the lifting strength of the motor and a hand crank. "Whether a particular type of information constitutes a trade secret is a question of fact and cannot be resolved on a motion to dismiss." *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1076 (S.D. Fla. 2003) (construing Florida's Trade Secret Act); *see BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 704 (7th Cir. 2006) (Because Wisconsin has adopted the Uniform Trade Secrets Act, "decisions by other jurisdictions [than Wisconsin] on questions involving the UTSA are to be given careful consideration.") (quoting *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 434 N.W.2d 773, 779-80 (1989)); *see also In re Iowa Freedom of Info. Council*, 724 F.2d 658, 663 (8th Cir. 1983) (whether a trade secret is involved is a question of fact). Even if the allegations in the initial complaint were overly vague, the proposed amended complaint is sufficiently particular as to the nature of the alleged trade secret to pass muster for the purposes of a motion to dismiss.

Cequent also contends that the plaintiffs have failed to allege misappropriation as required by both the Arkansas and Wisconsin acts. In Arkansas, "misappropriation" means:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of the trade secret; or

---

[3] Both Arkansas and Wisconsin have adopted, more or less, the Uniform Law Commission's Uniform Trade Secrets Act.

>    (ii) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>
>    > (a) Derived from or through a person who had utilized improper means to acquire it;
>    >
>    > (b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>    >
>    > (c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
>    (iii) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake[.]

Ark. Code Ann. § 4-75-601(2); *see also* Wis. Stat. § 134.90(2).

In the motion to dismiss, Cequent does not attack the plaintiffs' allegations that Cequent used the alleged trade secret. Rather, Cequent contends that it did not acquire any knowledge about the plaintiffs' invention under circumstances giving rise to a duty to maintain its secrecy or limit its use because none of Cequent's representatives signed a non-disclosure or confidentiality agreement. The proposed amended complaint alleges that the devices shown and provided to Cequent were stamped with the phrase "patent pending." Until, and if, they are published, applications for patents are kept confidential. *See* 35 U.S.C. § 122(a). Thus, the plaintiffs' use of the phrase "patent pending" on the devices, if proved, provides a basis for concluding that Cequent had reason to know that it should keep its knowledge of the plaintiffs' invention a secret. *See Roach Mfg. Corp. v. Northstar Indus. Inc.*, No. 3:09CV29, 2011 WL 3625587, at *7 (E.D. Ark. Aug. 17, 2011); *Sentinel Prods. Corp. v.*

*Mobile Chem. Co.*, No. Civ. A. 98-11782, 2001 WL 92272, at *10 (D. Mass. Jan. 17, 2001).[4] The plaintiffs have stated a claim for misappropriation of a trade secret.

Nevertheless, Cequent contends that it is entitled to dismissal of this claim because the plaintiffs' patent application was published on April 7, 2005. *See BondPro Corp.*, 463 F.3d at 707 ("Published patent applications are in fact studied by inventors in the relevant field, and so a secret disclosed in them will ordinarily (we need not decide whether invariably) lose its status as a trade secret."). Assuming that the publication of the application for the 331 patent destroyed the status of any trade secret vis-a-vis the plaintiffs' device, the plaintiffs' proposed amended complaint only states that Cequent was made aware of and began to use the alleged trade secret in 2005. Because it is possible, based on the face of the proposed amended complaint, that Cequent misappropriated the plaintiffs' trade secret before the plaintiffs' patent application was published, dismissal of this claim is inappropriate at this time.

**E.      Tortious Interference**

The plaintiffs allege that Cequent tortiously interfered with contracts between the plaintiffs and third parties for the sale of the plaintiffs' invention. In Arkansas,

> [t]he elements of tortious interference are: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship; and (4) resultant damage to the party whose relationship has been disrupted.

---

[4] Similarly, and despite Cequent's argument to the contrary, the alleged use of the phrase "patent pending" on the devices is evidence that, if proved, provides a basis for finding that the plaintiffs' took reasonable efforts under the circumstances to protect the secrecy of their trade secret. *See Roach Mfg. Corp.*, 2011 WL 3625587, at *7; *see also* Ark. Code Ann. § 4-75-601(4)(B); Wis. Stat. § 134.90(1)(c)2.

11

*Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 959, 69 S.W.3d 393, 405 (2002); *see also Ga.-Pac. Consumer Prods. LP v. Myers Supply, Inc.*, 621 F.3d 771, 777 (8th Cir. 2010). Further, "the conduct of the defendants [must] be at least 'improper[.]' " *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 444, 47 S.W.3d 866, 875 (2001).[5]

In their complaint, the plaintiffs allege that they had contracts to sell their devices to two companies. However, the plaintiffs do not allege that Cequent was aware of these contracts. Moreover, the proposed amended complaint does not allege any facts that, if proved, would tend to establish that Cequent was aware of these contracts. Therefore, the plaintiffs have failed to state a claim for intentional interference with their contractual relations.

**F.     Deceptive Trade Practices**

The plaintiffs allege that Cequent violated the Arkansas Deceptive Trade Practices Act by stealing and using the plaintiffs' trade secrets. However, the Arkansas Theft of Trade Secrets Act "displaces conflicting tort, restitutionary, and other laws of this state pertaining to civil liability for misappropriation of a trade secret." Ark. Code Ann. § 4-75-602(a). "The Arkansas Supreme Court has read the plain meaning of this section to create an absolute bar to double recovery under other civil claims." *Roach Mfg. Corp.*, 2011 WL 3625587, at *7 (citing *R.K. Enter., LLC v. Pro-Comp Mgmt., Inc.*, 356 Ark. 565, 571-74, 158 S.W.3d 685, 688-90 (2004) ("[T]he statutory language of the Trade Secret Act displaces or preempts the award of damages based upon tort claims . . . that may arise under a claim for misappropriation of trade secrets.")). "[T]he ATSA [is] the exclusive remedy for misappropriation of trade secrets." *Id.* (citing *Vigoro Indus., Inc. v. Cleveland Chem. Co.*

---

[5] Wisconsin law provides substantially similar elements for a claim of tortious interference with contractual relations. *See Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994).

*of Ark., Inc.*, 866 F. Supp. 1150, 1160-61 (E.D. Ark. 1994), *rev'd on other grounds by Vigoro Indus., Inc. v. Crisp*, 82 F.3d 785 (8th Cir. 1996)). Consequently, the plaintiffs' deceptive trade practices claim must be dismissed.

### G.     McGlothlin's Standing

Cequent challenges McGlothlin's standing to bring the patent claims because the complaint alleges that McGlothlin assigned the patent to MCB Sales. "A patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d); *see also* 35 U.S.C. § 261 (addressing assignment of patents). However, where the inventor or patentee relinquishes all of his legal interest in a patent to another, the patentee no longer has standing to sue for patent infringement occurring thereafter. *See Bhandari v. Cadence Design Sys., Inc.*, 485 F. Supp. 2d 747, 750 (E.D. Tex. 2007); *see also Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) ("The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the legal title to the patent *during the time of the infringement*.") (emphasis in original); *Moore v. Marsh*, 74 U.S. 515, 522, 19 L. Ed. 37 (1868) ("[T]he right of action is given to the person or persons owning the exclusive right at the time the infringement is committed[.]").

Here, it appears from the face of the patent that McGlothlin, the inventor, assigned the patent to MCB Sales at least from the date that the patent issued. Nevertheless, the Court declines to dismiss McGlothlin on standing grounds for two reasons. First, it is not clear from the face of the proposed amended complaint whether the assignment was a total assignment of McGlothlin's legal interests or only a partial assignment. Indeed, the proposed amended complaint, which appears to

identify McGlothlin as the "Plaintiff" in the first sentence, refers to the "Plaintiff's patent" and "damages." Construing the complaint in McGlothlin's favor, the complaint appears to allege that he maintained an ownership interest in the patent. Furthermore, even assuming McGlothlin surrendered all legal interest in the 331 patent on the date it was issued, he may have standing to recover for any infringement occurring before then. *See* 35 U.S.C. § 154(d). The Court can address this standing issue once the nature of the assignment becomes more transparent.[6]

Similarly, it is unclear at this stage in the litigation whether McGlothlin suffered any injury, separate and apart from MCB Sales' injury, based on Cequent's alleged misappropriation of the plaintiffs' trade secret. Consequently, the Court declines to dismiss McGlothlin's trade secret claim at this time. Finally, the Court will not address Cequent's argument that McGlothlin lacks standing to assert a tortious interference claim because that claim will be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Frank Drake's Motion to Dismiss for Lack of Personal Jurisdiction, and the plaintiffs' Motions to Non-Suit Drake Individually are GRANTED. Documents #24, #33. All claims asserted against Drake are dismissed without prejudice.

The plaintiffs' Motion to Amend their Complaint is GRANTED. Document #40. Cequent's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) is GRANTED in part and DENIED in part. Document #26. The motion is denied with respect to the plaintiffs' patent infringement claim and misappropriation of trade secrets claim. The motion is granted with respect to all of the plaintiffs'

---

[6] The plaintiffs may have brought the present action on behalf of both McGlothlin and MCB Sales based on the rule that "[a]n action for infringement must join as plaintiffs all co-owners." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998).

other claims, which are dismissed without prejudice.  The plaintiffs must file their amended complaint within seven days after entry of this Opinion and Order.

    IT IS SO ORDERED this 16th day of May, 2012.

                                        */s/ J. Leon Holmes*
                                        J. LEON HOLMES
                                        UNITED STATES DISTRICT JUDGE