**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

DANNY MCGLOTHLIN and MCB SALES                                                        PLAINTIFFS
& INSTALLATION SERVICES, INC.

v.                                          NO. 1:11CV00055 JLH

CEQUENT PERFORMANCE PRODUCTS, INC.                                             DEFENDANT

**OPINION AND ORDER**

  Danny McGlothlin and MCB Sales & Installation Services, Inc., brought this action, seeking monetary damages and injunctive relief for patent infringement, patent interference, misappropriation of trade secrets in violation of Arkansas's and Wisconsin's trade secrets acts, violations of the Arkansas Deceptive Trade Practices Act, and tortious interference with contractual relations, as well as a declaratory judgment that two of the patents belonging to Cequent Performance Products, Inc., are invalid. This Court previously dismissed all claims except for those against Cequent for trade secret misappropriation and patent infringement. *See* Document #42. Cequent has moved for summary judgment on these remaining claims. For reasons explained below, Cequent's motion for summary judgment is granted.

**I.**

  In 2003, McGlothlin applied for a patent for a device that uses a motor to raise and lower landing gear on trailers. Landing gear are jacks underneath a trailer that lower and raise a trailer to engage and disengage the trailer with the trailer's towing vehicle. McGlothlin assigned the patent to MCB Sales. On December 25, 2007, the patent was issued as United States Patent No. 7,311,331. MCB Sales markets and sells this device as the Easy Lift Motorized Jack System. Document #67-6

at 3.[1]

That patent claims a combination comprising of, among other parts, support members that secure the device to a trailer, a drive comprising of a motor, a first drive shaft connected to a motor and two cross members, and a first cross member and second cross member that are means for raising and lowering support members. Document #67-16 at 10-12. The first drive shaft has two end portions, the "first end portion being affixed to said first cross member and said second end portion being affixed to said second cross member." *Id.* at 10; *see also id.* at 11-12 (discussing the first drive shaft's structure in more detail). The patent contains eighteen claims, all of which include limitations of a first cross member and a second cross member, and most of which discuss the first drive shaft's connection to the two cross members. Claim number seven, for example, states in full, "The combination of claim 1, wherein the first end portion of the first drive shaft is directly affixed to the end of the first cross member and the second end portion of the first drive shaft is directly affixed to the end of the second cross member." *Id.* at 10.

MCB Sales attempted to sell the Easy Lift to Sundowner Trailers, Inc. Sundowner informed MCB Sales that it would not buy Easy Lifts for its trailers unless Cequent tested them first. Document #67-1 at 31-32.[2] Cequent tested the Easy Lift and determined that the powered jacking device was too strong and might damage the Cequent-made Bulldog jacks on the Sundowner trailers.

Cequent later began selling its own powered jacking device, the Bulldog drive kit, designed specifically for use on Cequent's 12,000-pound Bulldog jacks. *See* Document #67-11 at 12-13

---

[1] MCB Sales also seems to refer to the device as the "Easy Lift Mechanical Jack Lift System," Document #67-6 at 9, and as the "Easy Lift System," Document #67-7 at 2.

[2] Sundowner used Bulldog jacks in its trailers, which were sold by Cequent. Sundowner was concerned that the Easy Lift would harm the Bulldog jacks and affect the warranty on the jacks that Sundowner had with Cequent. Document #67-2 at 11-12.

(testimony of Frank Drake, Cequent's Director of Engineering). The Bulldog drive kit integrates its drive shaft directly with the 12,000-pound Bulldog jack, eliminating the need for a cross member if only one jack is being used. One cross member can be attached to the Bulldog drive kit if two jacks are being used. McGlothlin, the plaintiff and named inventor of the #331 patent, explained that a drive shaft is different from a cross member and that the Bulldog drive kit uses either no cross member or one cross member:

> Q  And [the Bulldog drive kit's] drive shaft . . . is not the cross member; is that right?
> A  That's right.
>
> * * *
>
> Q  [I]s it your understanding that the Bulldog power drive kit can be purchased by customers for use with only one jack?
> A  Yes, sir.
>
> * * *
>
> Q  So, in other words, when you attach Cequent's power drive kit to two jacks, what you have is the first drive shaft that goes directly through the first jack, and then a cross member attached to the second drive shaft that attaches to the second shaft – to the second jack; is that right?
> A  That's right.
>
> * * *
>
> Q  When you were in that situation where you have the power drive from Cequent, the Bulldog brand power drive, attached with two jacks, you only have one cross member; is that right?
> A  Yes, sir.
> Q  You don't have a second cross member?
> A  No, sir.

Document #67-1 at 116-19.

McGlothlin and MCB Sales claim that Cequent's Bulldog drive kit infringes MCB Sales's #331 patent. The other claims to survive Cequent's prior motion to dismiss were the claims that Cequent misappropriated trade secrets. Plaintiffs have conceded that no genuine issue of material fact exists pertaining to trade-secret misappropriation. Therefore, summary judgment is granted to

Cequent on plaintiffs' trade-misappropriation claims. The remaining issue is whether Cequent's Bulldog drive kit infringes MCB Sales's #331 patent.

## II.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make a showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.

A plaintiff can prove patent infringement either through literal infringement or through the doctrine of equivalents. *See Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1344

(Fed. Cir. 2013). "A determination of infringement involves two steps: First, the court determines the scope and meaning of the asserted patent claims. The court then compares the properly construed claims to the allegedly infringing device to determine whether all of the claim limitations are present, either literally or by a substantial equivalent." *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318-19 (Fed. Cir. 2011). A court need not construe the claims beyond what is necessary to determine whether the accused device infringes the patent. *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001).

"Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *V-Formation, Inc. v. Benetton Grp., SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). Here, each of the eighteen claims of the #331 patent limits it to a device with two cross members. The Bulldog drive kit does not have two cross members. It either has none, when being used with one jack, or one, when being used with two jacks. Therefore, since not every limitation set forth in the #331 patent's claims appears in the Bulldog drive kit, the Bulldog drive kit does not literally infringe the #331 patent. Plaintiffs make no argument to the contrary and effectively concede this point.

Plaintiffs argue, however, that even if no literal infringement exists, the Bulldog drive kit still infringes the #331 patent through the doctrine of equivalents. According to plaintiffs, the Bulldog drive kit's drive shaft is equivalent to a cross member of the #331 patent. The doctrine of equivalents applies when the accused infringing product does not include each claim limitation of the patent but instead includes elements that are equivalent to each claim limitation. Equivalence occurs when the difference between the claim limitation and its asserted equivalent is insubstantial and can be assessed by determining whether the asserted equivalent "'performs substantially the same function in

5

substantially the same way to obtain the same result' as an element of the patented invention." *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013) (quoting *Union Paper-Bag Mach. Co. v. Murphy*, 97 U.S. 120, 125, 24 L. Ed. 935 (1877)). The issue is not whether the device as a whole is functionally equivalent to the patented product; the "essential inquiry" is, "Does the accused product or process contain elements identical or equivalent to *each claimed element* of the patented invention?" *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S. Ct. 1040, 1054, 137 L. Ed. 2d 146 (1997) (emphasis added).

The plaintiff has the burden of proving infringement under the doctrine of equivalents. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007). "[A] patentee must provide particularized testimony and linking argument with respect to the 'function, way, result' test." *Cephaolon, Inc.*, 707 F.3d at 1340. This evidence "*must be presented on a limitation-by-limitation basis*. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *AquaTex Indus., Inc.*, 479 F.3d at 1328 (quoting *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)). The particularized testimony must be from "a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents." *Id.* at 1329. If a patentee does not produce such particularized testimony, then summary judgment is appropriate. *See id.* ("In short, in opposing summary judgment, AquaTex only provided lawyer argument and generalized testimony about the accused product. It has failed to demonstrate a genuine issue of material fact that would prevent the grant of summary judgment.").

Here, plaintiffs have provided testimony that the Bulldog drive kit generally performs a similar

function of using a motor to raise and lower landing gear for trailers as does the Easy Lift. They have not, however, provided particularized testimony explaining how the Bulldog drive kit's drive shaft is functionally equivalent to a cross member in the #331 patent. Instead, plaintiffs' witness deposition testimony explains how the #331 patent's cross members and the Bulldog drive kit's drive shaft are different, not how they are similar:

> Q And [the Bulldog drive kit's] drive shaft . . . is not the cross member; is that right?
> A That's right.
> \* \* \*
> Q [I]s it your understanding that the Bulldog power drive kit can be purchased by customers for use with only one jack?
> A Yes, sir.
> \* \* \*
> Q So, in other words, when you attach Cequent's power drive kit to two jacks, what you have is the first drive shaft that goes directly through the first jack, and then a cross member attached to the second drive shaft that attaches to the second shaft – to the second jack; is that right?
> A That's right.
> \* \* \*
> Q When you were in that situation where you have the power drive from Cequent, the Bulldog brand power drive, attached with two jacks, you only have one cross member; is that right?
> A Yes, sir.
> Q You don't have a second cross member?
> A No, sir.

Document #67-1 at 116-19 (testimony of McGlothlin).[3] Further, the #331 patent's claims limit the

---

[3] The one place in McGlothlin's testimony that could be interpreted as stating equivalence between a cross member and Bulldog drive kit's drive shaft is when, after McGlothlin explains that the Bulldog drive kit does not have a second cross member, he states,
> The second one is hooked directly to the jack. You know, that's out of the gearbox. It's hooked directly to the jack. That's why – they make their jacks with their gears already in here. But if you get a – well, like if I order a kit from them, I would get the gears that the Bulldog would put on the shaft right here separate.

Document #67-1 at 119-20. Although the phase "second one" could be a reference to the Bulldog drive kit's drive shaft acting as a second cross member, the remainder of the statement is an explanation of how the Bulldog drive kit differs from the #331 patent. Moreover, to clear up that

7

patent to a device with two cross members and at least one drive shaft. *See* Document #67-16 at 10-12 (referring to cross members and drive shafts as separate entities). According to the claims, the first end portion of the first drive shaft is "affixed" to the first cross member, and the second end portion of the first drive shaft is "affixed" to the second cross member. *See id.* (claims 1, 4, 7, 11, 12, 13, 14, 16, 17, 18); *see also Regents of the Univ. of Minn. v. AGA Med. Corp.*, No. 07-CV-4732, 2011 WL 13943, at *2 (D. Minn. Jan. 4, 2011) ("[T]hings that are 'affixed' are, by that word's necessary implications, *originally separate*." (internal quotations omitted)), *aff'd*, 717 F.3d 929, 935 (Fed. Cir. 2013). Nothing in the claims allows for an interpretation that a drive shaft can be the functional equivalent of a cross member.[4] Since plaintiffs have provided no evidence to support their alternative interpretation, they have failed to show that a genuine issue of material fact exists, and Cequent's motion for summary judgment is granted.

---

explanation, McGlothlin was asked, "And just to be clear, all I'm saying, though is that with the Bulldog system, you only have one cross member, not two cross members?" to which he responded, "Right." *Id.* at 120.

[4] The parties have submitted a joint claim chart identifying claim terms from patent #331 for which they seek construction, which includes their proposed constructions. No formal construction of the terms identified in the chart is necessary because, as discussed, the #331 patent claims a device with two cross members, and the claims specifically distinguish a cross member from a drive shaft, which is all that is necessary for deciding the issue here. *See Ballard Med. Prods.*, 268 F.3d at 1358 ("As long as the court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best."). The proposed constructions do, however, enforce the point that a cross member is separate from a drive shaft. The claim terms identified by Cequent involve similar language explaining that the end portions of the first drive shaft shall be affixed to the two cross members. One instructive example is claim seven, which states that "the first end portion of the first drive shaft is directly affixed to the end of the first cross member and the second end portion of the first drive shaft is directly affixed to the end of the second cross member." Document #67-16 at 10. Plaintiffs' proposed construction would have that sentence read, "[the] first end portion [of the first drive shaft] is directly affixed to the first pipe connected to the drive shaft, [and the second end portion of the first drive shaft is directly affixed to the second pipe connected to the drive shaft]." Document #65-1 at 2. Even under this construction, the drive shaft is a separate entity affixed to two pipes that presumably are the cross members specifically mentioned in the claim.

Because Cequent did not directly infringe MCB Sales's #331 patent, any claims for induced or contributory infringement also fail. *See Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1312 (Fed. Cir. 2004) ("Because there can be no induced or contributory infringement without an underlying direct infringement, . . . we affirm the district court's grant of summary judgment against the patentee . . . .").

## CONCLUSION

Plaintiffs concede that no genuine issue of material fact exists on their trade-secret-misappropriation claims, and Cequent's motion for summary judgment is granted for these claims. Document #66.

Plaintiffs have not provided evidence necessary to show that a genuine issue of material fact exists that Cequent's Bulldog drive kit infringes MCB Sales's #331 patent. Therefore, Cequent did not infringe the #331 patent, and its motion for summary judgment on plaintiffs' direct and indirect patent-infringement claims is granted. Document #66.[5]

IT IS SO ORDERED this 31st day of July, 2013.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[5] Cequent also argues that McGlothlin does not have standing to sue for patent infringement. Because the Court grants Cequent's motion for summary judgment on the patent-infringement claims, it does not reach the issue of whether McGlothlin has standing.

9